UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
WALTER SANTOS,

                        Plaintiff,

          -against-

THE CITY OF NEW YORK, DETECTIVE HECTOR
RODRIGUEZ (Shield 5980, Brooklyn South Narcotics
Division), LIEUTENANT LARRY BURNHAM (Brooklyn
South Narcotics Division), DETECTIVE AGAPITO
SOLER (Shield 5009, Brooklyn South Narcotics Division),
DETECTIVE DANIEL MURPHY (Shield 2727, Brooklyn
South Narcotics Division) and DETECTIVE CHARLES
MARTELLO (Shield 5603, Brooklyn South Narcotics
Division),

                        Defendants.
-------------------------------------------------------------------------X

09 CV 0147 (BMC)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff **WALTER SANTOS**, by his attorney, Joel Berger, Esq., for his complaint alleges, upon information and belief, as follows:

### *NATURE OF THE ACTION*

        1.    This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment, and malicious prosecution, by employees of the New York City Police Department (NYPD).

### *JURISDICTION AND VENUE*

        2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

        3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

        4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

## *PENDENT JURISDICTION*

5. This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On September 18, 2008, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action was commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

9. Plaintiff demands trial by jury in this action.

## *PARTIES*

10. Plaintiff **WALTER SANTOS** is citizen of the United States and a resident of the State of New York.

11. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12. At all times relevant herein, defendants Lieutenant Larry Burnham and Detectives Hector Rodriguez (Shield 5980), Agapito Soler (Shield 5009), Daniel Murphy (Shield 2727) and Charles Martello (Shield 6303) were assigned to the NYPD's Brooklyn South Narcotics Division.

13. At all times relevant herein, defendants Lieutenant Burnham and Detectives Rodriguez, Soler, Murphy and Martello were working as a team that Burnham, as a Lieutenant Detective, commanded.[1]

14. At all times relevant herein, defendants Burnham, Rodriguez, Soler, Murphy and Martello were acting as agents, servants and employees of defendant City of New York and the NYPD.

15. At all times relevant herein, all defendants were all acting under color of state law.

## *FACTS*

16. On Friday, September 5, 2008, at approximately 10:25 A.M., in the vicinity of Wycoff and Nevins Streets in Brooklyn, New York, plaintiff Walter Santos was arrested by NYPD detectives.

17. The arresting officer who swore out the Criminal Court complaint (Docket No. 2008KN065987) was defendant Detective Hector Rodriguez, Shield 5980, of the Brooklyn South Narcotics Division Command.

18. The Criminal Complaint was fraudulent, and was known by the arresting officer and the other individual defendants in this case to be so.

19. The Grand Jury dismissed the case on September 12, 2008, and plaintiff was released from custody the following day. GJ Case No. 8883/2008.

20. By the time of his release from custody, plaintiff had been incarcerated for 8 days on

---

[1] At the time of his arrest plaintiff believed that the name of the Lieutenant was "Byrnes" rather than the similar-sounding "Burhnam," and he mistakenly named a Lieutenant Byrnes of the NYPD's Brooklyn Housing Division as a defendant in the original complaint. The City subsequently acknowledged in its Rule 26(a) (1) (A) (i) Initial Disclosures that the correct name of the Lieutenant in question was Larry Burnham, who is assigned to the Brooklyn South Narcotics Division. Plaintiff hereby withdraws the name of Lieutenant Byrnes as a defendant and apologizes to him and to the City for the error.

3

this baseless accusation.

21. On the date of the incident plaintiff had gotten off work as a security guard at approximately 8 A.M., and had returned to his home at 272 Wycoff Street, where he lives with his elderly mother.

22. Shortly thereafter plaintiff left his building to purchase bread for his mother at a nearby store. He proceeded to the store and purchased the bread for his mother.

23. Upon exiting the store, Mr. Santos was accosted by defendant Burnham and one of the detectives, both Caucasian, who arrested him.

24. On the street Burnham and this detective made plaintiff take off his sneakers and socks. His pockets were turned inside out, and the officers reached inside his pants. No contraband of any kind was found. Nonetheless, plaintiff was turned over to Rodriguez and one of the other detectives, both Hispanic, and was taken to a police precinct.

25. Subsequently plaintiff was subjected to a full strip search/body cavity search at a police precinct. That search did not reveal any contraband of any kind, either.

26. Plaintiff Walter Santos was not found by the police to be in possession of any narcotics or any other contraband.

27. Plaintiff Walter Santos was not found by the police to be in possession of any currency indicative of a sale of narcotics or any other contraband.

28. Detective Rodriguez's sworn Criminal Court complaint nonetheless charged Mr. Santos with criminal possession of a narcotic drug with intent to sell it (a class B felony, New York State Penal Law § 220.16 (1)), criminal sale of a narcotic drug (also a class B felony, Penal Law §

4

220.39 (1)), and criminal possession of a controlled substance in the seventh degree (a class A misdemeanor, Penal Law § 220.03).

29. In the Criminal Court complaint, a copy of which is annexed hereto, Rodriguez swears that he observed another man hand money to plaintiff, after which plaintiff entered a nearby building, after which plaintiff exited the building and handed an object to the other man, after which the other man was found to be in possession of two glassine envelopes containing heroin. (The other man is identified in the complaint as Gustavo Alameda, arrest # K08678801).

30. Plaintiff spent an entire week in jail before the case was presented to a King County Grand Jury.

31. Had the arresting officer or any other officer testified before the Grand Jury to the truth of the allegations of the sworn Criminal Court complaint, plaintiff undoubtedly would have been indicted.

32. Instead, the Grand Jury dismissed the case against plaintiff. Notifications of the dismissal, provided to plaintiff and his criminal defense attorney by the Kings County District Attorney's Office, are annexed hereto.

33. Rodriguez and/or one or more of the other individual defendants herein either admitted before the Grand Jury that the sworn allegations of the Criminal Court complaint were untrue, or possibly did not appear to avoid committing perjury before the Grand Jury.

34. Plaintiff appeared before the Grand Jury and denied that he had sold or possessed any narcotics, but his testimony alone would hardly have occasioned a Grand Jury dismissal if the police version of the matter, as set forth in the Criminal Court complaint, had been presented to the Grand

Jury. Clearly it was not.

35. Plaintiff was released from custody on the morning of September 13, 2008, after having spent eight days in custody on the false charges.

36. Plaintiff was unable to recover the job that he had held until the morning of his arrest.

37. The NYPD command principally responsible for inflicting this injustice upon plaintiff, the Brooklyn South Narcotics Division, is notorious for its corrupt and incompetent conduct. Last year four of its officers were arrested and at least 15 others suspended or placed on desk duty as a result of charges that they stole drugs and traded drugs for sexual favors and information from drug addicts and prostitutes. The supervisors knew of this corrupt "cowboy culture" but ignored it. Additionally, prosecutors complained that the Division was extremely lax and sloppy in developing cases. The scandal led to the transfers of the Deputy Chief in charge of the Narcotics Division citywide, the Inspector in charge of Brooklyn South Narcotics, and two Captains in Brooklyn South Narcotics. *See* New York *Daily News*, January 22 and 23, 2008 (copies of articles annexed). This case indicates that despite high-level supervisory transfers, the street detectives of Brooklyn Narcotics South continue to perpetuate a "cowboy culture" and operate in a haphazard fashion that violates the rights of ordinary law-abiding residents who are not involved with narcotics.

38. The continuing haphazard and sloppy conduct of the Brooklyn South Narcotics Division was evident in defendants' strained effort to find some legitimate reason for having arrested plaintiff. The arrest report prepared by Rodriguez and approved by Burnham (provided by defendants as an Initial Disclosure on February 9, 2009 and annexed hereto) accused plaintiff of criminal sale of a stimulant/hallucinogen/LSD (Penal Law § 220.39 (2)) and claimed that he had sold

it to two apprehended others. However, as noted above (¶¶ 28-29, pp. 4-5), when it came time to swear in a Criminal Court Complaint, defendants decided that plaintiff had sold heroin (Penal Law § 220.39 (1), sale of a narcotic drug)) -- not LSD -- and had sold it to one apprehended other rather than two.[2] And when it came time to appear before the Grand Jury, defendants were unable to swear that plaintiff had engaged in any unlawful conduct whatsoever.

### *FIRST CLAIM FOR RELIEF*

39. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-38.

40. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *SECOND CLAIM FOR RELIEF*

41. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-38 and 40.

42. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police detectives, supervisors and officers.

43. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police detectives, supervisors and officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

44. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-37, 39 and 41-42 violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the

---

[2] The crime defined by § 220.39 (2) (sale of stimulants and hallucinogens) requires a prior conviction for some offense involving a controlled substance (Penal Law Article 220). Plaintiff has never been convicted of any such offense. Defendants did not need a prior conviction to charge plaintiff with sale of heroin (Penal Law § 220.39 (1)).

Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### THIRD CLAIM FOR RELIEF

45. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-38, 40, and 42-44.

46. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, assault, battery, illegal search, the intentional, willful and malicious infliction of severe physical, mental and emotional distress, and employee negligence.

47. The conduct toward plaintiff alleged herein subjected him to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, physical, and psychological and emotional injury, trauma, pain, and suffering, and loss of income.

### FOURTH CLAIM FOR RELIEF

48. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-38, 40, 42-44, and 46-47.

49 At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

  (c)  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

  (d)  Such other and further relief as this Court deems just and proper.

Dated: New York, New York
    February 10, 2009

              */s/ Joel Berger*
              **JOEL BERGER (JB3269)**
              360 Lexington Avenue, 16th Fl.
              New York, New York 10017
              (212) 687-4911

              **ATTORNEY FOR PLAINTIFF**

  

# New York City Police Department
## Omniform System - Arrests

| | |
|---|---|
| **RECORD STATUS:** *ARR PRC CMPL* | **Arrest ID: K08678796 - M** |
| **Arrest Location:** NORTH EAST CORNERNEVINS STREET & WYCKOFF STREET | **Pct:** 078 |

**Arrest Date:** 09-05-2008    Processing Type: ON LINE
  **Time:** 10:35:00    DCJS Fax Number: KO063506
  Sector: C    Special Event Code: -
              DAT Number: 0
Stop And Frisk: NO    Return Date: 0000-00-00
  Serial #: 0000-000-00000

## ARREST DATA - COMPLAINT NOT REQUIRED

Jurisdiction: NYPD    **NYC School Safety Data:**    **NYC Transit Data:**
Premises: STREET    On School Property:    Station:
Location Within: PUBLIC SIDEWALK    School Type:    Line #:
Occur Date/Time: 2008-09-05 - 10:35    School Num:    Location:
**NYC Housing Development:**    School Name:

Offence Location: NORTH EAST CORNERNEVINS STREET & WYCKOFF STREET   Borough: BROOKLYN

## CHARGES:                                        Arrest #: K08678796

CHARGE  ATTEMPT?  LAW CODE   CLASS  TYPE  COUNTS  DESCRIPTION
TOP     No        PL 220.39 02 F   B          2    CSCS-3RD:STIMULANT/HALLUC/LSD

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

## DETAILS:                                        Arrest #: K08678796

AT T/P/O DEFT. DID EXCHANGE A QUANTITY OF CONTROLED SUBSTANCE FOR USC TO TWO(2) APPREHENDED OTHERS.

## *DEFENDANT:* SANTOS, WALTER    NYSID #:    Arrest #: K08678796

Nick/AKA/Maiden:    Height: 5FT 7IN    Order Of Protection: NO
Sex: MALE    Weight: 130    Issuing Court:
Race: WHITE HISPANIC    Eye Color: BROWN    Docket #:
Age: 40    Hair Color: BROWN    Expiration Date:
Date Of Birth: 11/05/1967    Hair Length: SHORT    Relation to Victim: STRANGER
U.S. Citizen: YES    Hair Style: CLOSE CUT    Living together: NO
Place Of Birth: NEW YORK    Skin Tone: MEDIUM    Can be Identified: NO
Need Interpreter: NO    Complexion: CLEAR
Language:
Accent: NO    Soc Security #: 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
              Occupation: UNKNOWN    Gang Affiliation: NO
Physical Condition: APPARENTLY NORMAL  Lic/Permit Type:    Name:
Drug Used: NONE    Lic Permit No:    Identifiers:

| LOCATION | ADDRESS | CITY | STATE/CNTRY | ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|---|
| HOME-PERMANENT | 272 WYCKOFF STREET | BROOKLYN | NEW YORK | | 8H | 078 |

Phone # and E-Mail Address  HOME: 718-522-6839

NYC 2

| | | | |
|---|---|---|---|
| N Y C H A Resident: NO | N Y C Housing Employee | On Duty: | |
| Development: | N Y C Transit Employee | | |

| | | |
|---|---|---|
| Physical Force: NONE | Gun: | Used Transit System: NO |
| Weapon Used/Possed: NONE | Make: | Station Entered: |
| Non-Firearm Weapon: | Color: | Time Entered: |
| Other Weapon Description: | Caliber: | Metro Card Type: |
| | Type: | Metro Card Used/Poses: |
| | Discharged: NO | Card #: |

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | UNK |
| CLOTHING | ACCESSORIES - JEANS - BLUE |
| CLOTHING | FOOTWEAR - SNEAKERS - WHITE |
| CLOTHING | HEADGEAR - UNK - UNKNOWN COLOR |
| CLOTHING | OUTERWEAR - OTHER - BLACK |
| CHARACTERISTICS | GOATEE |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

## JUVENILE DATA:      Arrest #: K08678796

Juvenile Offender:    Relative Notified:    Personal Recog:
Number Of Priors: **0**    Name:
School Attending:    Phone Called:
Mother's Maiden Name:    Time Notified:

## ASSOCIATED ARRESTS:      Arrest #: K08678796

ARREST ID COMPLAINT #

## DEFENDANTS CALLS:      Arrest #: K08678796

CALL # NUMBER DIALED NAME CALLED DATE TIME

## INVOICES:      Arrest #: K08678796

INVOICE# COMMAND PROPERTY TYPE VALUE

## ARRESTING OFFICER: DT2 HECTOR RODRIGUEZ      Arrest #: K08678796

| | | |
|---|---|---|
| Tax Number: **898408** | On Duty: **YES** | **Force Used: NO** |
| Other ID (non-NYPD): **898408** | In Uniform: **NO** | Type: |
| Shield: **5980** | Squad: **MC** | Reason: |
| Department: **NYPD** | Chart: **97** | Officer Injured: **NO** |
| Command: **740** | Primary Assignment: | |

| Arresting Officer Name: DT2 RODRIGUEZ, HECTOR | Tax #: 898408 | Command: 740 | Agency: NYPD |
|---|---|---|---|
| Supervisor Approving: LT BURNHAM LARRY | Tax #: 897100 | Command: 740 | Agency: NYPD |
| Report Entered by: DT3 ANDREONE, DEREK | Tax #: 921917 | Command: 740 | Agency: NYPD |



# END OF ARREST REPORT
# K08678796



CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

 

THE PEOPLE OF THE STATE OF NEW YORK

v

WALTER SANTOS

DETECTIVE HECTOR J RODRIGUEZ SHIELD NO.5980, OF THE BSND COMMAND SAYS THAT ON OR ABOUT SEPTEMBER 05,2008 AT APPROXIMATELY 10:25 AM AT NEVINS STREET & WYCKOFF STREET, COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 220.16(1)        CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN
                    THE THIRD DEGREE
PL 220.39(1)        CRIMINAL SALE OF A CONTROLLED SUBSTANCE IN THE
                    THIRD DEGREE (DQO)
PL 220.03           CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN
                    THE SEVENTH DEGREE

IN THAT THE DEFENDANT DID:

KNOWINGLY AND UNLAWFULLY POSSESS A CONTROLLED SUBSTANCE; KNOWINGLY AND UNLAWFULLY POSSESS A NARCOTIC DRUG WITH INTENT TO SELL IT; KNOWINGLY AND UNLAWFULLY SELL A NARCOTIC DRUG.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE AS FOLLOWS:

THE DEPONENT STATES THAT, AT THE ABOVE TIME AND PLACE, A PUBLIC SIDEWALK, DEPONENT OBSERVED APPREHENDED OTHER GUSTAVO ALAMEDA ARREST NO.K08678801 HAND THE DEFENDANT A SUM OF UNITED STATES CURRENCY, THAT DEPONENT THEN OBSERVED THE DEFENDANT ENTER A NEAR-BY BUILDING, THAT AFTER SEVERAL MINUTES DEPONENT OBSERVED THE DEFENDANT EXIT SAID BUILDING, AND THAT THE DEPONENT THEN OBSERVED THE DEFENDANT HAND GUSTAVO ALAMEDA AN OBJECT.

DEPONENT FURTHER STATES THAT DEPONENT RECOVERED 2 GLASSINE ENVELOPES CONTAINING HEROIN FROM GUSTAVO ALAMEDA'S PERSON.

DEPONENT FURTHER STATES THAT DEPONENT HAS HAD PROFESSIONAL TRAINING AS A POLICE OFFICER IN THE IDENTIFICATION OF HEROIN, HAS PREVIOUSLY MADE ARRESTS FOR THE CRIMINAL POSSESSION OF HEROIN, HAS PREVIOUSLY SEIZED HEROIN, WHICH WAS DETERMINED TO BE SUCH BY A CHEMICAL ANALYSIS BY THE POLICE DEPARTMENT LABORATORY, AND THE SUBSTANCE IN THIS CASE POSSESSES THE SAME PHYSICAL CHARACTERISTICS AS SUCH PREVIOUSLY CHEMICALLY IDENTIFIED SUBSTANCE AND BY PROFESSIONAL TRAINING AND EXPERIENCE AS A POLICE OFFICER IS FAMILIAR WITH THE COMMON METHODS OF PACKAGING HEROIN AND THE GLASSINE ENVELOPE USED TO PACKAGE THE SUBSTANCE IN THIS CASE IS A COMMONLY USED METHOD OF PACKAGING SUCH SUBSTANCE AND THAT A FIELD TEST OF THE SUBSTANCE CONFIRMED THAT THE SUBSTANCE IS HEROIN.

BASED ON THE FOREGOING, IN DEPONENT'S OPINION, THE SUBSTANCE IN THIS CASE IS HEROIN.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

OFFICE OF THE DISTRICT ATTORNEY
THE COUNTY OF KINGS

GRAND JURY UNIT
320 JAY ST
BROOKLYN, N.Y.  11201

WALTER SANTOS
272 WYCKOFF STREET 8H
BROOKLYN NY

GJ CASE NO. 8883/2008

DOCKET NOS.   2008KN065987

PLEASE BE ADVISED THAT ON SEPTEMBER 12, 2008, A MATTER PENDING BEFORE THE GRAND JURY OF THE COUNTY OF KINGS ENTITLED PEOPLE VS. WALTER SANTOS WAS DISMISSED BY THE GRAND JURY.

ASSISTANT DISTRICT ATTORNEY
IN CHARGE - GRAND JURY UNIT

OFFICE OF THE DISTRICT ATTORNEY

THE COUNTY OF KINGS

MARK J. CLARK
244 5TH AVENUE  #N271
NEW YORK, NY

GRAND JURY UNIT
320 JAY STREET
BROOKLYN, N.Y.  11201

GJ CASE NO.  8883/2008

PLEASE BE ADVISED THAT ON SEPTEMBER 12 2008, A MATTER PENDING BEFORE THE GRAND JURY OF THE COUNTY OF KINGS KINGS ENTITLED PEOPLE VS. WALTER SANTOS WAS DISMISSED BY THE GRAND JURY.

ASSISTANT DISTRICT ATTORNEY

IN CHARGE - GRAND JURY

# Brooklyn narcotics cops benched over drug and sex for information charges

BY ALISON GENDAR AND WILLIAM SHERMAN
DAILY NEWS STAFF WRITERS

Tuesday, January 22nd 2008, 4:00 AM

Heads rolled at the top of the NYPD's Narcotics Division Monday night after the Daily News learned that 20 cops were benched over charges that undercover officers took sex, drugs and cash from junkies and dealers.

NYPD and law enforcement sources said 15 cops - all from the midnight crew of Brooklyn South Narcotics - have been put on desk duty as part of a five-month investigation by the NYPD's Internal Affairs Bureau.

That's on top of four members of the midnight crew busted on allegations they stole drugs to pay off informants and another who was suspended on undisclosed internal charges, sources told The News.

"No one wanted these guys doing drug cases under this cloud," a law enforcement source said. The cops make up two full squads of Brooklyn South Narcotics. Detectives from other units have been brought in to take over their cases.

Sources said Police Commissioner Raymond Kelly transferred the commanding officer of citywide narcotics, Deputy Chief James O'Neill; the head of Brooklyn South Narcotics, Inspector James O'Connell, and two Brooklyn South Narcotics captains, John Maldari and Joseph Terranova.

Kelly replaced O'Neill with Deputy Chief Joseph Reznick, the sources said.

Sources said probers are checking to see if:

- 
- Officers traded drugs for sexual favors with informants and prostitutes.
- The corrupt tactics permeated the unit.
- Supervisors knew of the alleged corruption.

"You have a handful of guys basically shaking down drug dealers," one source said. "Given that these officers were not the smartest bulbs in the box, how secret could it have been? Where were the bosses? Asleep? Complicit? Intimidated?"

At the least, it was clear that supervision of the unit was "incredibly sloppy and lax," two high-ranking law enforcement sources said.

One source said Special Narcotics Prosecutor Bridget Brennan was "fed up" with the work of the unit and was "wary of the cases they develop." Brennan could not be reached.

Dozens of prosecutions - including convictions where dealers are currently serving long sentences - could be compromised or overturned, another source said.

Sources said the corrupt cowboy culture came to light last fall, when undercover Detective Sean Johnstone, 34, forgot he was wearing a wire and bragged to another narcotics cop how he had seized 28 bags of cocaine but turned in only 17.

Johnstone was caught on the profanity-laced tape boasting about a Sept. 13 buy-and-bust operation involving Mitchell Pratt, a drug dealer from Coney Island.

Johnstone implicated himself and Police Officer Julio Alvarez, 30, on the tape. Both men, cops since July 2001, were arraigned Dec. 20 on charges of official misconduct and falsifying business records.

http://www.nydailynews.com/news/ny_crime/2008/01/22/2008-01-22_brooklyn_narcotics...    4/11/2008

Their arrests opened an investigation that led to the arrest last week of Sgt. Michael Arenella, 31, and Officer Jerry Bowens, 41, of the same squad. Arenella has been with the NYPD eight years and Bowens 12.

At least one of the four has been accused of having sex with an informant. Others were also accused of stealing cash from arrested drug dealers and using it to pay off tipsters.

A fifth officer - whose name was not disclosed - was suspended over the weekend, sources said. It was unclear if he would face any criminal charges. None of the five implicated cops has talked with NYPD investigators or other law enforcement officials.

Senior police sources said Kelly had been planning a shakeup since the December arrest, but held off until last week's busts could be made.

The Brooklyn South Narcotics squad is no stranger to controversy. More than 50 Brooklyn South investigators were transferred in late 2003, when the department learned it had paid out $45,000 for overtime never worked.

The scandal slowed a number of investigations, sources said, and may have contributed to some drug-related violence in the area.

More than five years ago, a female police officer who worked in the unit charged in a sex harassment suit that it was a "frathouse" of alcohol and pornography.

wsherman@nydailynews.com

# NYPD narcotics probe has compromised more than 150 Brooklyn criminal cases

BY ALISON GENDAR AND WILLIAM SHERMAN
DAILY NEWS STAFF WRITERS

Wednesday, January 23rd 2008, 4:00 AM

The mushrooming NYPD narcotics squad scandal has compromised more than 150 criminal cases in Brooklyn and could put drug dealers back on the streets, sources told the Daily News.

The stunning fallout of the corruption scandal emerged as sources revealed that a crack addict has told investigators she had sex with one of the arrested cops.

The junkie claims she had sex with Officer Jerry Bowens, 41, a member of the Brooklyn South narcotics unit where 20 cops were benched over charges of taking sex, drugs and cash from addicts and dealers.

The News detailed the corrupt cowboy culture, and the sweeping reforms to the NYPD Narcotics Division imposed by Police Commissioner Raymond Kelly, in a front-page exclusive Tuesday.

The scandal's greatest fallout involves criminal cases against drug dealers brought by the cops of the unit. More than 150 cases are under review by the Brooklyn district attorney's office. The cases could be dismissed because in the buy-and-bust operations the undercover cops involved typically are the only prosecution witnesses.

"Defense attorneys could make mincemeat out of a cop on the [witness] stand if the cop was involved in this mess," said a source close to the investigation. "And it could force old cases to be reopened, examined and thrown out as well even if the arrests were good."

The junkie who claims she had sex with Bowens told Internal Affairs Bureau investigators the encounter was consensual, but she told her family she was raped. Bowens was charged with official misconduct, sources said.

Bowens, who also was charged with falsifying records and narcotics possession, could not be reached for comment.

In the scandal, four cops from the unit were arrested, one suspended and 15 others put on desk duty in the past month amid allegations that cops were stealing seized drugs to pay off informants, having sex with informants and stealing cash from drug dealers to pay off tipsters.

"I have full confidence in the ability and the integrity of the Internal Affairs Bureau of the NYPD and we're working very closely with them," Brooklyn District Attorney Charles Hynes said. He declined to discuss details of the probe.

The corruption came to light when a Brooklyn South undercover detective was caught on his own wire bragging about seizing 28 bags of drugs and turning in only 17. He allegedly gave the other bags to informants.

Detective Sean Johnstone, 34, was caught on the tape recording last September and was one of four cops arrested. A fifth was suspended and could face criminal charges.

No evidence has surfaced so far to implicate any cops with taking money or drugs for personal use.

"It's a way to cut corners, giving drugs to a [confidential informant]," said a police source who served with one of the four busted cops.

'Give your guys drugs'

Undercover cops are allowed to pay snitches, known as confidential informants, but have to go through a lengthy vetting and paperwork process to do so.

"The department doesn't have a lot of money to pay out. So it's quicker and you can get better information if you

give your guys drugs," the source said. "It's cheating, but it's a lot more common than the department wants to admit."

On Monday, Kelly reshuffled the city narcotics brass, replacing the citywide narcotics commander, Deputy Chief James O'Neill, with Deputy Chief Joseph Reznick. Kelly also transferred the head of Brooklyn South Narcotics, Inspector James O'Connell, and two captains.

It's not the first time Kelly has reshuffled the top brass overseeing narcotics investigations.

O'Neill, a 24-year veteran, was handpicked by Kelly nearly three years ago to help curb the cowboy culture in the NYPD's Organized Crime and Control Bureau, which oversees the Narcotics Division.

An internal review of the bureau in December 2004 found the quality of staff dipped when it went from an elite group of about 1,500 cops to more than 4,300 officers.

The result "was a significant infusion of unqualified, inexperienced personnel who lacked the dedication and drive essential to a highly specialized unit," the December report stated.

Sources said Reznick is a strong personality in the NYPD. He butted heads with detectives when he worked in the Bronx. Several investigators resigned or asked for transfers rather than work with Reznick, the sources said.

"Reznick's personal skills are lacking," a police source said. "But even detectives who hate him said if they were murdered, they'd want him overseeing their case."

agendar@nydailynews.com